**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JDA Software Incorporated, et al., | No. CV-14-01565-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Sergio Berumen, et al., | |
| Defendants. | |

Before the Court is Counter-Defendants' Motion to Dismiss Count I of the Second Amended Counterclaim. (Doc. 67.) The motion is fully briefed and the Court heard oral argument on November 24, 2015. The relevant factual background is discussed in the Court's prior dismissal order. (Doc. 60.) For the following reasons, Counter-Defendants' motion is granted.

## **LEGAL STANDARD**

When analyzing a complaint for failure to state a claim to relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid dismissal, the

complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

Count I of the Berumens' amended counterclaim alleges that Counter-Defendants breached a fiduciary duty owed to them as Plan members by pursuing subrogation/reimbursement rights (1) while intending to misuse subrogation monies and (2) without mitigating damages. (Doc. 64, ¶¶ 18-19, 20, 26-28.)

**I. Misuse of Subrogation Monies**

ERISA provides that a civil action may be brought:

[B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). Under 29 U.S.C. § 1104(a)(1)(A), a plan fiduciary has a duty to act "solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A). A claim for breach of fiduciary duty under ERISA requires a plaintiff to prove: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citation omitted).

The parties agree that JDA was acting as the Plan fiduciary at all relevant times. The Berumens claim that JDA breached its fiduciary duty by violating ERISA's anti-inurement provision, 29 U.S.C. § 1103(c). (Doc. 64, ¶ 24, 26.) The anti-inurement provision requires that, with certain limited exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of

providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c).  The Berumens claim that JDA violated this provision by pursuing its subrogation/reimbursement rights while "intend[ing] to use the subrogation recovery to offset" its future obligations to the Plan.  (Doc. 64, ¶¶ 18-19, 27.)

As originally alleged, the Berumens' claim was based on provisions in Counter-Defendants' Administrative Services Agreement ("ASA") with its Claims Administrator, non-party United Healthcare. Specifically, Section 12.8 of the ASA, which addresses third party recoveries, states in relevant part:

> We will provide services to recover Plan benefits that were paid and are recoverable by the Plan because payment was or should have been made by a third party . . . for the same medical expense.
>
> . . .
>
> You will be charged fees when any of the services described in this section are provided by us through a subcontractor.  The fees are deducted from the actual recoveries.  You will be credited with the net amount of the recovery.

(Doc. 48-1 at 13.)   The Court dismissed the Berumens' original counterclaim after concluding that this language, alone, did not make it plausible that the credit offsets JDA's future contributions to the Plan.[1]

The amended counterclaim is largely identical to its predecessor, but also relies on the following statement made by Counter-Defendants in their previous motion to dismiss:

> The ASA provides that when the Plan benefits are recovered, JDA, the party responsible for funding benefits, is credited with the net amount of the recovery after fees are deducted. The credit goes directly to JDA, the entity responsible for funding the benefits under the Plan.  Fees are paid to United only if a recovery is made.

 (Doc. 64, ¶ 18; Doc. 51 at 3.)   The Berumens argue that this language constitutes an

---

[1] For clarification, the Court did not determine in its prior order that allegations based on information and belief are *per se* insufficient to survive a motion to dismiss. The Court merely noted that the Berumens' allegations were clearly based on the innocuous ASA language, which did not support the inference the Berumens were drawing in their counterclaim.

admission that JDA pockets subrogation monies. The Court disagrees.

First, the statement that the Berumens quote merely summarizes Section 12.8 of the ASA. Second, there is nothing unusual about crediting subrogation monies to the entity responsible for a self-funding employee benefit plan. From this innocuous fact, the Berumens draw the unsupported inference that JDA pockets the money and does not use it to benefit the Plan or its members. The quoted language says nothing about how subrogation monies are used once JDA receives the credit. As the Court previously found, the fact that JDA is credited with the third party recovery, alone, does not plausibly suggest wrongdoing. Absent factual allegations suggesting that JDA fails to apply this credit to benefit the Plan members or defray administrative costs, the Berumens have not alleged a plausible breach of fiduciary duty based on misuse of subrogation monies.

**II. Stop-Loss Insurance**

The Berumens also contend that Counter-Defendants:

> must have either made a claim for stop loss insurance and are failing to reduce the reimbursement amount sought from the Berumens accordingly, and as such have violated the anti-inurement and breach of fiduciary duty provisions of ERISA[,] or they failed to mitigate their damages by not making such a claim, thus failing to mitigate their damage.

(Doc. 64, ¶ 28.) However, the existence of stop-loss insurance typically does not alter the nature of an ERISA plan or preclude it from exercising a right to subrogation/reimbursement. *See United Food & Commercial Workers & Emp'rs Ariz. Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161-62 (9th Cir. 1986). If the Berumens are suggesting that Counter-Defendants are not entitled to recover the full amount of benefits paid either because a portion of those payments were already defrayed through a stop-loss insurer or because Counter-Defendants failed to mitigate their damages by making a claim against their stop-loss insurance, such allegations are more appropriately raised as an affirmative defense. Indeed, the Berumens already assert the existence of stop-loss insurance as an affirmative defense, (Doc. 64, ¶ 18), and Counter-Defendants agree that, if stop-loss insurance is relevant to the parties' dispute, it is

appropriately raised as "an affirmative defense relating to the amount of recovery that the Plan may be entitled to – not the entitlement itself," (Doc. 67 at 6). Accordingly, although the Berumens' stop-loss allegations do not plausibly suggest that Counter-Defendants breached a fiduciary duty, they may be asserted as an affirmative defense to the amount of recovery to which Counter-Defendants might be entitled.

**IT IS ORDERED** that Counter-Defendants' Motion to Dismiss Count I of the Second Amended Counterclaim, (Doc. 67), is **GRANTED** without prejudice to the Berumens seeking leave to file an amended counterclaim based on facts uncovered through discovery.

Dated this 7th day of December, 2015.

Douglas L. Rayes
United States District Judge