**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JDA Software Incorporated,<br><br>  Plaintiff,<br><br>v.<br><br>Sergio Berumen,<br><br>  Defendant. | No. CV-14-01565-PHX-DLR<br><br>**ORDER** |

Plaintiffs/Counter-Defendants are the JDA Software Incorporated Welfare Benefit Plan (the Plan) and JDA Software Incorporated (collectively, JDA). Defendants/Counterclaimants are Sergio and Sylvia Berumen. Before the Court are the parties' cross-motions for summary judgment. (Docs. 89, 91.) The motions are fully briefed, and the Court heard oral argument on September 15, 2016. For the following reasons, JDA's motion is granted and the Berumens' motion is denied.

## BACKGROUND

This case arises under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. The Plan is a self-funded employee welfare benefit plan sponsored by JDA. (Doc. 90, ¶ 41.) During the relevant time period, Sylvia Berumen was a JDA employee and both she and her spouse, Sergio, were Plan participants. (Doc. 90, ¶ 3; Doc. 92, ¶ 2.) In March 2010, Mr. Berumen was severely injured in a motor vehicle collision. (Doc. 90, ¶ 9; Doc. 92, ¶ 1.) He required a

substantial amount of medical care and incurred $342,638.81 in medical costs, which were paid by the Plan. (Doc. 90, ¶ 10; Doc. 92, ¶ 4.) The Berumens later brought a personal injury action against the other motorist, along with an underinsured motorist claim, and recovered $1,370,000. (Doc. 90, ¶ 11; Doc. 92, ¶¶ 8-10.) JDA then brought this lawsuit under 29 U.S.C. §1132(a)(3)(B) to enforce a reimbursement clause in the Plan's Summary Plan Description (SPD). (Doc. 15; Doc. 90, ¶¶ 6-8.) JDA seeks an equitable lien over Mr. Berumen's third party settlement funds to reimburse the Plan for the medical expenses it paid on his behalf. (Doc. 89 at 4.) The Berumens counterclaimed against JDA, alleging that it failed to furnish required plan documents and seeking statutory penalties under 29 U.S.C. § 1132(c). (Doc. 64.) JDA seeks summary judgment on all claims and counterclaims; the Berumens seek summary judgment on JDA's claims only. (Doc. 89 at 1; Doc. 91 at 2.)

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v.*

*Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## ANALYSIS

**I. Claim for Equitable Relief Under 29 U.S.C. § 1132(a)(3)**

An ERISA plan fiduciary may bring a civil action to obtain "appropriate equitable relief" to enforce plan terms. 29 U.S.C. §1132(a)(3). Such relief may include an equitable lien over specifically identifiable funds that the beneficiary agreed to convey to the plan. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006). To secure an equitable lien, the plan must show that (1) the beneficiary promised to reimburse the plan for benefits paid under the plan if there is subsequent recovery from a third party, (2) the agreement specifically identifies a fund, apart from the beneficiary's general assets, from which the plan will be reimbursed, and (3) the specifically identified funds are within the beneficiary's possession and control. *Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1092-93 (9th Cir. 2012).

Two of these requirements are not in dispute. First, the SPD's reimbursement clause states: "if a third party causes Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury." (Doc. 90, ¶¶ 7-8.) Thus, the provision identifies a specific fund distinct from the Berumens' general assets from which the Plan will be reimbursed. Second, the Berumens are holding $342,638.81 of the third-party settlement funds in trust pending the outcome of this litigation and, therefore, the funds are within their possession and control. (Doc. 14.)

The dispositive question is whether the Berumens promised to reimburse the Plan. The SPD is the only document detailing the terms of the Plan, and contains provisions giving the Plan the right to reimbursement from third party recoveries. (Doc. 90, ¶¶ 6-8; Doc. 92, ¶ 11.) The Berumens argue, however, that the SPD's contents do not constitute Plan terms within the meaning of ERISA and, therefore, JDA cannot enforce the

- 3 -

reimbursement provision under § 1132(a)(3).  (Doc. 91 at 7.)  Alternatively, the Berumens argue that (1) they did not promise to reimburse JDA because they did receive a copy of the SPD and (2) the reimbursement provision is unconscionable.  (*Id.* at 9, 11.) The Court disagrees.

### A. Enforceability of the SPD

An ERISA plan must "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).  "[O]nce a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, --- U.S. ---, 134 S. Ct. 604, 612 (2013) (quoting 29 U.S.C. § 1102(a)(1)).  To ensure that participants and beneficiaries understand the terms of their plan, the plan administrator must furnish a summary, referred to as an SPD, "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).  Unlike governing plan documents, SPDs are meant to "provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan[.]" *Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011); *see also US Airways, Inc. v. McCutchen*, --- U.S. ---, 133 S. Ct. 1537, 1543 n.1 (2013).  Thus, if the contents of an SPD conflict with the terms of governing plan documents, the latter control. *Amara*, 563 U.S. at 436-38.

In this case, however, the SPD is the only document detailing the rights and obligations of Plan participants.  Moreover, the Berumens acknowledged during oral argument that the SPD contains all of the information required of a governing plan document. *See* 29 U.S.C. § 1102(b).  Evidently this is not an uncommon practice.

> For certain types of plans, notably health plans, plan sponsors frequently take a "consolidated" approach to their documents where the plan document and the SPD take the form of a single document. . . . Th[is] approach[ ] to plan documents stand[s] in contrast to the traditional practice of using a formal legal document with a separate SPD document, the latter being distributed to covered individuals apart from the full plan document.

3 ERISA Practice and Litigation § 12:38. In these situations, "the SPD is sometimes argued to *be* the plan; that is, to serve simultaneously as the governing plan document." *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015).

Relying on *Amara*, the Berumens argue that the SPD cannot simultaneously serve both purposes. (Doc. 91 at 2-3.) *Amara*, however, did not involve a consolidated plan document, and courts that have addressed consolidated plans consistently have found that an SPD can serve as the governing plan document if it is the only document detailing the participants' rights and obligations and contains all necessary information. *See e.g.*, *Bd. of Trustees v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) ("Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD, if the terms of the plan so provide."); *Bd. of Trustees of Nat'l Elevator Industry Health Benefit Plan v. Montanile*, 593 F. App'x 903, 910 (11th Cir. 2014) *vacated and remanded on other grounds*, 644 F. App'x 984 (11th Cir. 2016) (enforcing SPD because it was the only written instrument providing for the rights and obligations of plan participants and noting that "the *Amara* Court had no occasion to consider whether the terms of a [SPD] are enforceable where it is the only document that specif[ies] the basis on which payments are made to and from the plan") (internal citations and quotations omitted); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) ("Where no other source of benefits exists, the summary plan description is the formal plan document, regardless of its label."); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) ("Although the [SPD] contains the disclaimer that it was 'not intended to cover all details of the Plan' and that the 'actual provisions of the Plan will govern,' we reject the notion that this disclaimer renders the [SPD] a non-plan during the period when it was the only written document describing benefits.") The Court finds these authorities persuasive. The SPD is enforceable because it is the only document describing the rights and obligations of Plan participants, it contains all information required of governing plan documents, and the Berumens received benefits pursuant to its terms.

### B. Furnishing the SPD

The Berumens next argue that the SPD's reimbursement provision cannot be enforced against them because they did not receive a copy of the SPD during the time that Mrs. Berumen was employed with JDA.[1]  Plan administrators are required to furnish participants and beneficiaries with a copy of the SPD within ninety days of enrollment. 29 U.S.C. § 1024(b)(1)(A).  Documents may be furnished electronically provided that the system for doing is: reasonably calculated to ensure actual receipt of the information.  29 C.F.R. § 2520.104b-(1)(c)(1)(i).  JDA made the SPD available via an internal HR Portal accessible by all employees.  A link to the HR Portal was provided to Mrs. Berumen during a mandatory benefits training shortly after she was hired.  These measures are sufficiently calculated to ensure that employees receive the SPD.  *See Beal v. Barnes Healthcare of Florida, LLC*, No. 3:05-cv-689-J-16MMH, 2007 WL 220163, at *2 (M.D. Fla. Jan. 25, 2007) ("Defendant states that providing information as to where to obtain the document, i.e., website, at corporate office, and providing the ability to obtain the document, i.e., access to a computer and the Internet, meets the requirements of the statute. The Court would have to agree. In today's ever increasing electronic society, transmission by email and/or referral to websites are the norm rather than the exception.").  Moreover, having received medical benefits pursuant to the SPD, the Berumens may not now "deny the corresponding responsibilities and obligations that are clearly imposed on [them] in the same document[.]"  *See Gamboa*, 479 F.3d at 545.

### C. Unconscionability

Finally, relying primarily on Arizona law, the Berumens argue that the SPD constitutes an unconscionable contract of adhesion.  ERISA plans, however, are not governed by state law.  Rather, "the interpretation of ERISA insurance policies is governed by a uniform federal common law."  *Evans v. Safeco Life Ins. Co.*, 916 F.2d

---

[1] The Berumens also argue that they did not promise to reimburse the Plan because they did not sign the SPD.  They cite no authority, however, that requires ERISA plans to be signed by participants and beneficiaries, nor is the Court aware of any.

- 6 -

1437, 1439 (9th Cir. 1990). The Berumens cite no authority applying state unconscionability principles to ERISA plans, nor is the Court aware of any. *See Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 655 (7th Cir. 2001) (noting that no case has included unconscionability principles in federal common law of ERISA). To the contrary, several courts have found that ERISA preempts state law unconscionability claims. *See Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 875 (W.D. Tex. 2001) ("ERISA conflict preemption disallows [plaintiff's] state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, breach of fiduciary duty, accounting, unconscionability, intentional misrepresentation, negligent misrepresentation, wrongful conversion and unjust enrichment."); *Castillo v. Tyson Foods, Inc.*, No H-14-2354, 2015 WL 6039236, at *9 (S.D. Tex. Oct. 15, 2015) (rejecting unconscionability defense because plaintiff "ha[d] not cited . . . cases applying unconscionability under the federal common law of ERISA as a defense against enforcement of a benefit plan's terms.").

Moreover, contracts of adhesion are not *per se* unenforceable, *see Broemmer v. Abortion Servs. of Phx., Ltd.*, 840 P.2d 1013, 1016 (Ariz. 1992), and the Berumens have cited no ERISA cases finding reimbursement provisions unconscionable. Indeed, several courts have rejected arguments that reimbursement provisions in ERISA plans are unfair to plan participants and beneficiaries. *See AT&T Inc., v. Flores*, 322 F. App'x 391, 394 (5th Cir. 2005); *Kress v. Foods Emp'rs Labor Relations Ass'n,* 391 F.3d 563, 570 (8th Cir. 2004); *United McGill Corp. v. Sinnett*, 154 F.3d 198, 173 (4th Cir. 1998). Moreover, reimbursement and subrogation provisions are "crucial to the financial viability of self-funded ERISA plans." *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Salazar,* 525 F. Supp. 2d 1103, 1113 (D. Ariz. 2007) (noting that it is in the interest of both the plan and its beneficiaries "that the [p]lan be reimbursed and remain soluble for future usage. Thus, reimbursement is not unfair.").

Accordingly, JDA has established the existence of an enforceable promise on the

part of the Berumens to reimburse the Plan for benefits paid if there is subsequent third-party recovery.  The reimbursement provision identifies a specific fund distinct from the Berumens' general assets from which the Plan will be reimbursed, and those funds are within the Berumens' possession and control.  JDA is, therefore, entitled to an equitable lien over $342,638.81 of the third-party settlement funds pursuant to the SPD's reimbursement provision and 29 U.S.C. §1132(a)(3).

**II. Counterclaim for Failure to Furnish Plan Documents**

In their counterclaim, the Berumens allege that JDA violated 29 U.S.C. §§ 1024(b)(4) and 1132(c) by failing to furnish them with the governing plan documents after they requested them.  Their counterclaim, however, is based on the mistaken assumption that the SPD cannot serve as the governing plan document.  It is undisputed that JDA timely provided the Berumens with copies of the SPDs after their attorney asked for them.  (*See* Doc. 64, ¶¶ 8-12.)  Accordingly, JDA is entitled to summary judgment on the Berumens' counterclaim.[2]

//
//
//
//
//
//
//
//

---

[2] The Berumens also assert for the first time in their response in opposition to JDA's motion for summary judgment that JDA did not comply with 29 U.S.C. § 1024(b)(4) because it failed to furnish its stop-loss insurance policy.  (Doc. 97 at 6-7.)  This theory, however, was not alleged in their counterclaim.  The Court will not consider new claims raised for the first time on summary judgment.  *See Wasco Products, Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal citation and quotation omitted).

**IT IS ORDERED**, that JDA's motion for summary judgment, (Doc. 89), is **GRANTED**, and the Berumens' motion for summary judgment, (Doc. 91), is **DENIED**. JDA is awarded $342,638.81 in reimbursement, to be paid from the third-party settlement funds deposited in the IOLTA trust account of Jackson White P.C. (*See* Docs. 14, 17.) The Clerk shall enter judgment accordingly and terminate this case.

Dated this 21st day of October, 2016.

Douglas L. Rayes
United States District Judge